FILED

2023 Sep-29  PM 02:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **BRENDA JEANETTE CROWE**     ) | |
| ) | |
|     **Plaintiff,**     ) | |
| ) | |
| **v.**     ) | **Case No.: 5:22-cv-00580-LCB** |
| ) | |
| **KILOLO KIJAKAZI, as Acting**     ) | |
| **Commissioner, Social Security**     ) | |
| **Administration, An Independent**     ) | |
| **Agency of the United States of**     ) | |
| **America,**     ) | |
| ) | |
|     **Defendant.**     ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Brenda Jeannette Crowe seeks judicial review of the final decision by the Social Security Administration's Commissioner to deny her claim for disability benefits. 42 U.S.C. § 405(g). The Court closely examined the record, and **AFFIRMS** the Commissioner's decision for the reasons explained below.

## I.   BACKGROUND

### A.   Standard of Review

A court's only task in reviewing a denial of disability benefits is to determine whether the Commissioner's decision is "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Substantial evidence "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*

Thus, courts reviewing an appeal from a denial of disability benefits may not "decide the facts anew, make credibility determinations, or re-weigh the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (cleaned up). Rather, the court *must* affirm the Commissioner's decision if the denial is supported by substantial evidence, even if the preponderance of the evidence weighs against the Commissioner's findings. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

### B.    Procedural History

Crowe applied for disability insurance benefits on September 20, 2019. (Doc. 5–3 at 11). She continued working until November 2019, when she retired. (*Id.* at 14.) After Crowe's claim was denied by the Social Security Administration on February 14, 2020, she requested reconsideration, and her application was denied again on June 25, 2020. (*Id.*) Following those administrative denials, Crowe requested a hearing before an Administrative Law Judge, who held a hearing on June 22, 2021. (*Id.*) She was represented by counsel at that hearing, which also included testimony from an impartial Vocational Expert, Katherine Bradford. (*Id.* at 11.) Following the hearing, the ALJ issued a decision again denying Crowe's claim for disability benefits, and the decision became final after the Social Security Appeals Council declined to review the ALJ's decision. (*Id.* at 1.) Having exhausted her

administrative remedies, Crowe appealed the Commissioner's final decision in this Court soon after.

### C.     The Social Security Disability Framework

The Social Security disability framework requires an ALJ to ask a series of questions to determine whether an applicant qualifies for disability benefits:

(1) Is the claimant engaged in substantial gainful activity?
(2) Does the claimant have a severe impairment?
(3) Does the claimant have an impairment or combination of impairments that meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?
(4) Is the claimant able to perform former relevant work?
(5) Is the claimant able to perform any other work within the national economy?[1]

20 C.F.R. §§ 404.1520(a), 416.920(a); *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

These steps are progressive, and the inquiry ends if the ALJ finds that the claimant has not met the requirements of any individual step. As a result, an ALJ will reach Step 4 only if a claimant is not engaged in substantial gainful activity (Step 1), has a severe impairment (Step 2), and does not have an impairment or combination of impairments that meets or medically equals a listed impairment (Step 3). *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). Before conducting the analysis required in Step 4, the ALJ must first determine the claimant's residual

---

[1] A claimant bears the burden of proof through Step 4, but the burden shifts to the Commissioner at Step Five. *See Wolf v. Chater* 86 F.3d 1072, 1077 (11th Cir. 1996). The ALJ here did not reach Step 5.

function capacity ("RFC"), which is the claimant's ability to perform work of any kind despite "all . . . medically determinable impairments" of which the ALJ is aware, "including . . . medically determinable impairments that are not 'severe.'" 20 C.F.R. § 404.1545(a)(2).

Once the claimant's RFC is established, the ALJ compares the claimant's RFC to the demands of their former relevant work (Step 4) and any other work in the national economy (Step 5). If a claimant can perform former relevant work, or the Agency can show that the claimant is able to perform any other work in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1512(f), (g).

### D.    The ALJ's Analysis

Although Crowe challenges the Commissioner's decision on three fronts, the ALJ's opinion followed the required analysis to the letter. (*See* Doc. 5–3 at 12–13.) At Step 1, the ALJ found that although Crowe was engaged in substantial gainful activity for the two months following her application for disability benefits, she retired at the end of that period and has not engaged in substantial gainful activity since then. (*Id.* at 14.)

At Step 2, the ALJ found that Crowe suffers from multiple severe impairments, namely degenerative disc disease of the cervical spine, osteoarthritis, and Ehlers-Danlos Syndrome, along with several other non-severe impairments. (*Id.*) As the ALJ noted, "[a]n impairment or combination of impairments is 'not

4

severe'" when the impairment or impairments "have no more than a minimal effect on an individual's ability to work." (*Id.* at 12) (citing 20 CFR § 404.1522). Crowe's non-severe impairments include carpal tunnel syndrome, obesity, paroxysmal tachycardia, vertigo, nystagmus, plantar fasciitis, hypothyroidism, and migraine headaches. (*Id.* at 14.)

At Step 3, the ALJ found that none of the claimant's impairments met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 17–18.)

That brings us to Step 4. After "careful consideration of the entire record," the ALJ concluded that Crowe possessed the RFC to perform "light work," including her past work as a dental hygienist. (*Id.* at 18–22.) In relevant part, the ALJ found that although Crowe's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . the claimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 19.)

For instance, Crowe alleged in a self-reported "adult function report" that she has "difficulty handling and manipulating objects," along with "difficulty sleeping, bathing, dressing and grooming herself due to pain and difficulty using her hands." (*Id.* at 19.) She also alleged that she is unable to prepare full meals and is limited to fifteen minutes of household chores and one hour of social activities before

exhaustion, even though she is also able "to drive, shop in stores, manage her finances, and volunteer at a local animal rescue." (*Id.*) Crowe also testified that she has radiating neck pain into her left arm, experiences frequent elbow dislocations, and regularly drops small objects. (*Id.*)

However, as the ALJ noted, Crowe's complaints are largely inconsistent with or indeterminable from the medical evidence, and the ALJ sufficiently and "systematically articulated [her] reasons for rejecting [Crowe's] subjective complaints" based on the evidence in the record. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Several inconsistencies noted by the ALJ are as follows:

- In March 2018, a rheumatologist found that Crowe demonstrated good grip strength, despite complaining of some "difficulty using her fingers." (Doc. 5–3 at 20.) When the same doctor saw her again, over two years later, Crowe "reported that her pain and stiffness were under control" and the doctor "described her existing deformities as mild." (*Id.* at 21.)

- When treated for "right arm pain" at Vanderbilt University Medical Center in October 2018, less than one year before applying for disability, her doctors observed only "slightly decreased strength in the right upper extremity, but . . . full range of motion and normal bulk and tone of the upper extremities," normal reflexes, and no sensory deficits. (*Id.*)

- In July 2019, Crowe's primary care provider observed swelling and redness in the joints of her hands, along with some deformity and hyperflexion, but observed "no gross sensorimotor deficits" or neurological deficits. (*Id.*)

- In April 2020, another doctor observed "no instability" in Crowe's hands, along with "good grip strength, good range of motion, and intact sensation." (*Id.*)

- Three days after she first filed for disability in September 2019, Crowe was treated for chronic joint pain, but told her doctor that she had never partially or fully dislocated a joint. Five days later, she reported "frequent" partial dislocation of some joints and balance problems. (*Id.*) In January 2020, her doctor reported that her symptoms were consistent with Ehlers-Danlos Syndrome, Type III (for which there is no reliable genetic test) and "opined that the claimant had difficulty walking, picking up objects, and carrying objects due to joint pain and weakness." (*Id.* at 20.) The ALJ did not find this report persuasive because it was inconsistent with prior findings by the same doctor and his colleagues.

These inconsistencies between Crowe's reported symptoms and the observations of her doctors continue throughout the record. Despite Crowe's complaints, the record shows that "no provider observed any [partial dislocation] or dislocation of any joint," that "providers typically observed normal grip strength and normal sensation," and that she "regularly exhibits normal strength, sensation, range of motion and gait." (*Id.* at 22.)

Finally, the ALJ reviewed medical opinion evidence from two state experts who offered administrative medical findings. Most importantly, *both* experts agreed that Crowe can perform light work. (*Id.* at 21–22.) Thus, the ALJ concluded that Crowe has a "light work" RFC, "supported by regular observations of normal gait, coordination, motor strength, motor tone, sensation, and range of motion of all extremities, in spite of some pain from osteoarthritis and cervical disc degeneration," and can work as a dental hygienist, as she has in the past. (*Id.* at 22) (omitting citations to the record).

## II.    DISCUSSION

Crowe contends that the Commissioner's decision is flawed on three fronts. Having closely reviewed the entire record, however, the Court does not find these arguments persuasive. First, Crowe alleges that the ALJ posed an improper hypothetical to the vocational expert during her hearing. Even so, that claim fails because the distinction Crowe tries to establish between a "factual" and "legal" term is meaningless here. Second, Crowe alleges that the ALJ gave improper weight to the opinion of one of the disability determination physicians. However, that claim fails not only because the ALJ's reliance on Dr. Whitman's opinion was entirely proper, but because Crowe has abandoned any challenge to the use of that opinion. Third, Crowe alleges that the statements of both disability determination physicians were improper legal statements. That argument fails because the ALJ's reliance on medical opinion evidence was properly supported by substantial evidence.

### A.    The ALJ did not pose an improper hypothetical to the vocational expert during Crowe's hearing.

As far as the Court can tell, Crowe's first claim seems to be that the ALJ's use of the word "frequent" in her hypothetical question to the vocational expert required the VE to interpret a legal term, not a factual one, and that this made the ALJ's hypothetical improper—although exactly how it does that is unclear. (Doc. 10 at 7, 12–13.) The question at issue was posed as follows:

8

[C]onsider an individual with Ms. Crowe's work history and limitations . . . [and] consider that such an individual can lift and carry 20 pounds occasionally, ten pounds *frequently*, can stand and/or walk for a total of six hours in an eight-hour workday, sit with normal breaks for a total of six hours in an eight-hour workday.

Pushing and pulling is the same as for lifting and carrying. Can occasionally climb ramps and stairs, never climb ladders, ropes and scaffolds, can *frequently* balance on uneven terrain, occasionally stoop, kneel, crouch and crawl, *frequent[ly]* handle and finger with bilateral upper extremities, and can tolerate occasional exposure to vibrations. No work . . . [with] hazards such as unprotected heights and dangerous, unguarded machinery. Given this hypothetical, could such an individual perform any of Ms. Crowe's past work?

(Doc. 5–3 at 108, 110–11.)

In any event, the distinction between legal and factual terms Crowe raises in her briefs meaningless. The mere fact that a word is defined in a statute or regulation is not enough to render it a purely legal term. As the Commissioner correctly points out, the use of adverbs of frequency, including "frequent" itself, is both common-place and common-sense in Social Security disability cases. Indeed, the express purpose of the Social Security Program Policy Statement that defines "frequent" is to "provide definitions of terms and concepts frequently used in evaluating disability under the medical-vocational rules." SSR 83–10, 1983 WL 31251 (S.S.A. 1983).

Crowe also contends that the ALJ's hypothetical failed to account for Crowe's disabilities in various ways, but those arguments are just as meritless. As Crowe herself concedes, neither state nor federal rules of evidence apply to Social Security

disability hearings, so Crowe's arguments on that front deserve no further consideration. (Doc. 10 at 5.) Further, as courts in this district and elsewhere have repeatedly held, "[a]n ALJ is not required to include references to diagnoses or impairments in the hypothetical questions." *Sims v. Comm'r of Soc. Sec. Admin.*, 2022 WL 682268, at *5 (N.D. Ala. 2022). As a result, hypothetical questions "only need[ ] to include the claimant's functional limitations that are supported by the record." *Id.*; *See also England v. Astrue*, 490 F.3d 1017, 1023 (8th Cir. 2007); *Holmes v. Comm'r of Soc. Sec. Admin.*, 2021 WL 4220355, at *6 (N.D. Ala. 2021).

The record is clear that the ALJ communicated all the concrete consequences of Crowe's medically determinable impairments in posing the hypothetical. Nothing more was required.

## B.    The ALJ's reliance on Dr. Whitman's opinion was not improper.

Crowe next contends that the ALJ's reliance on the opinion of the State's expert medical consultant, Dr. Whitman, was improper because he is not a "highly qualified" expert on Social Security rules and regulations within the meaning of 20 C.F.R. § 404.1513a(b)(1). (Doc. 10 at 17–19.) Crowe's only support for this argument is a twenty-four-year-old stipulation between Dr. Whitman and the Medical Licensure Commission of Alabama placing disciplinary restrictions on his medical license. (Doc. 10 at 17; Doc. 5–3 at 37–64.)

As said at the outset, this Court may not "decid[e] the facts anew, mak[e] credibility determinations, or re-weigh[ ] the evidence," *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005), and we decline Crowe's invitation to do so here. Furthermore, although Crowe alleges that the ALJ's consideration of Dr. Whitman's testimony somehow violated Due Process, the Court rejects that argument out of hand. Crowe has made no effort to show a relationship between these license restrictions and Dr. Whitman's expertise in Social Security rules and regulations, nor could she, based on a close review of the record. As a result, Crowe has not "explicitly challenged the weight given to the medical opinions by the ALJ, nor the ALJ's credibility determination," and has therefore "effectively abandoned any challenge to" the ALJ's decision to rely on Dr. Whitman's expertise. *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013).

### C.   The ALJ's reliance on medical opinion evidence was supported by substantial evidence.

Finally, Crowe alleges that the ALJ "base[d] her opinion basically on the opinions" of two state agency medical consultants, Drs. Sellman and Whitman. (Doc. 10 at 19.) But the ALJ's decision was based on a close examination of the *entire* record, not just those opinions. In fact, the consultants' opinions take up just three paragraphs in a thirteen-page opinion, and the ALJ's consideration of the full scope of medical evidence was thorough and extensive. (*See, e.g.*, Doc. 5–3 at 18–22.)

Crowe puts the finishing touches on her claim by arguing that the opinions of Drs. Sellman and Whitman "are to be rejected and given no weight by the ALJ as a fact finder" because their opinions use "programmatic terms" like "occasional" and "frequent." (Doc. 10 at 19, 22) (citing 20 C.F.R. § 404.1520b(c)(3)(v)). That argument is meritless for the same reasons explained above. *See* Section II.A, *supra.*

Even assuming Crowe's theory about "programmatic language" has some legs (and it doesn't), the wholesale disposal of any testimony that uses or relies on a defined term is not what the regulation calls for. To be sure, the regulation declares that "[s]tatements about . . . residual functional capacity" that use "programmatic terms about the functional exertional levels in Part 404, Subpart P, Appendix 2, Rule 200.00 instead of descriptions about [a claimant's] functional abilities and limitations" are "neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(3)(v) (cleaned up). But as the Commissioner correctly points out, statements using programmatic language are unhelpful *not* because they use programmatic language, but because they fall into the category of "Statements on issues reserved to the Commissioner."

Thus, the Commissioner remains ultimately "responsible for making the determination or decision about whether" a claimant is disabled. *Id.* at § 404.1520b(c)(3). That's why "the task of determining a claimant's residual functional capacity and ability to work rests with the administrative law judge, not a

doctor." *Moore v. Soc. Sec. Admin., Com'r*, 649 F. App'x 941, 945 (11th Cir. 2016) (cleaned up). So long as the ALJ's decision is supported by substantial evidence, the decision must be affirmed.

## III.  CONCLUSION

Because the decision of the Commissioner was supported by substantial evidence, and Crowe has demonstrated no error in the decision, the Court **AFFIRMS** the decision and **DISMISSES** this case with prejudice. The Court will enter a final judgment separately.

**DONE** and **ORDERED** September 29, 2023.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE